Sawyer brought this action against Chevron U.S.A., Inc., and others, to recover for injuries sustained in an automobile collision. Before proceeding to trial, Chevron's motion for summary judgment was granted and final judgment was entered in its behalf, pursuant to Rule 54 (b), ARCP. Sawyer appeals. We reverse and remand.
Sawyer was injured when a tractor-trailer truck, driven by Benjamin M. Brunson, an employee of McDonald Petroleum Company, collided with the rear of an automobile in which Sawyer was a passenger. The Chevron insignia was emblazoned on the trailer that also contained Chevron gasoline.
Brunson, the driver of the truck, was a salaried employee of McDonald Petroleum. His general duties were to open the plant in the mornings, check the tanks, check the vehicles to ensure they were in proper operating condition, and make deliveries of *Page 1264 
gasoline. The president of McDonald Petroleum, James McDonald, asked Brunson to work on the day of the accident, a Saturday. Brunson was instructed to deliver gasoline to the Malbis Plantation Chevron Station in Baldwin County after someone from that station called the offices of McDonald Petroleum about 10:00 a.m. requesting the delivery. Brunson left that station shortly after noon. The station was approximately twelve miles from the site of the collision on the Interstate 10 bridge from Spanish Fort toward Mobile.
The tractor-trailer involved in the collision was owned by McDonald Petroleum. McDonald Petroleum was a limited commission agent for Chevron and distributed Chevron petroleum products. McDonald Petroleum had the exclusive right to hire, pay, control, direct and discharge any and all of its officers and employees without approval by Chevron. The "Limited Commission Agent" agreement between McDonald Petroleum and Chevron required McDonald Petroleum to carry at its own expense, and for joint protection of it and Chevron, public liability insurance on all the automotive equipment operated directly, or indirectly, by McDonald Petroleum. That agreement also contained a termination provision which provided that either party could cancel the contract upon notice to the other party.
Chevron allowed McDonald Petroleum to use the Chevron logo on the trailer. Chevron owned the real property, storage facilities and loading facilities operated by McDonald Petroleum. The gasoline delivered by McDonald Petroleum was owned by Chevron. McDonald Petroleum would deliver gasoline and certain other petroleum products to a service station; the service station would pay Chevron for those products; and Chevron would pay McDonald Petroleum a commission based on the products it delivered.
Sawyer presents the following issue on appeal:
 ". . . Whether a jury question of agency or joint venture with respect to Chevron's liability is presented in an action for personal injuries arising from a collision between a tractor trailer truck and the vehicle in which Plaintiff was riding, when the truck was owned by and the driver employed by Chevron's commission agent, McDonald Petroleum, but the truck displayed Chevron logos and carried Chevron's gasoline on a delivery to Chevron's independent service station, when Chevron required the commission agent to maintain automotive liability insurance covering Chevron, when Chevron owned the commission agent's plant, real estate and facilities, and when Chevron invoiced and collected all payments from its service station customers, paying the commission agent a portion of the sales revenue as a commission."
Sawyer contends the facts in this case are sufficient to present a jury question as to whether there existed a relationship of master and servant between Chevron and McDonald Petroleum or whether they were engaged in a joint venture, and in either event, Chevron would be liable for the damages caused by the negligent or wanton acts of McDonald Petroleum or its employees.
There is little doubt that the controlling question in this case is the relationship of McDonald Petroleum to Chevron. The test to be used in determining such relationship is whether Chevron had a reserved right of control over the means and agencies by which the work was done or the result produced, not the actual exercise of such control. Tuscaloosa Veneer Co. v.Martin, 233 Ala. 567, 172 So. 608 (1937). From this test, one may seek to ascertain whether the relation between the parties is that of an independent contractor, or of an employer-employee or master-servant. Moore-Handley Hardware Co.v. Williams, 238 Ala. 189, 189 So. 757 (1939).
In examining the cases on this issue, it is apparent that the courts have held one to be an employer when he has reserved some power of control over the one he asserts is an independent contractor.
In Harbour v. Colonial Fast Freight Lines, Inc.,336 So.2d 1100 (Ala. 1976), a *Page 1265 
master and servant relationship was found to exist. There, the owner-lessor leased his truck-trailer exclusively to a certificated motor freight common carrier. Under the terms of the lease, the lessor-owner, Matthews, furnished the vehicle and its operator; he was required to maintain the vehicle in proper operating condition and to pay the expenses of maintenance and repair. The agreement expressly provided that there was no employer-employee relationship created by it and Matthews was solely responsible for the direction and control of employees under the contract.
Similarly, in Stevens v. Deaton Truck Line, Inc., 256 Ala. 229, 54 So.2d 464 (1951), the lessee motor freight carrier had the exclusive right of control over use of the vehicle. The arrangement could be terminated by either party upon 30 days' notice. Rental for the vehicle was based on a gross percentage of revenue derived from operation of the vehicle. Identification plates were purchased by the lessee, while state tags were provided by the lessor. The owner was required to repair and maintain the vehicle during the lease period at his own expense. Property damage and public liability insurance premiums were paid by the lessee, while fire, theft and collision premiums were paid by the owner-lessor. This court held the lessor-owner, when carrying out his duties under the lease, was an employee or servant rather than independent contractor.
The court considered similar agreements in Deaton Truck Linev. Acker, 261 Ala. 468, 74 So.2d 717 (1954); Anderson v. HowardHall Co., 272 Ala. 466, 131 So.2d 417 (1961); Thomas v.Hubbert, 280 Ala. 302, 193 So.2d 746 (1966); Cox v. Howard HallCo., 289 Ala. 35, 265 So.2d 580 (1972); and in each concluded that an employer-employee or master-servant relationship existed rather than that of independent contractor.
In Stevens, Acker, Anderson, Thomas, and Cox, recovery was denied on the ground the driver of the leased vehicle was acting outside the line and scope of his employment at the time of the accident. In Harbour, the court held that whether the lessor-owner was acting within the line and scope of his employment presented a genuine issue as to a material fact, precluding summary judgment. Here, there is no question but that Brunson was within the scope of his employment at the time of the accident.
Lease agreements, such as the ones enumerated above, bear significant resemblance to the Chevron-McDonald limited commission agent agreement. The fact that the lessor-owner retained the right to hire and control employees was not sufficient to establish the status of the lessor-owner as an independent contractor. In Hays v. Deaton Truck Line, 264 Ala. 442, 87 So.2d 825 (1956), the court noted that the master-servant relationship between the owner-lessor and the lessee was not changed by the owner-lessor's employment of a driver. The driver was considered a servant of both. In this case, McDonald Petroleum retained the right to hire and control its own employees. The fact that Brunson, the driver of the vehicle, was controlled by McDonald Petroleum is not determinative of the relationship between McDonald Petroleum and Chevron.
In substance, these lease arrangements obligated the lessor to provide vehicles, operators, and maintenance of the vehicles in return for a percentage of the profits derived from the use of the vehicle and the lessee was to have his goods delivered. The Chevron-McDonald agreement appears designed to attain a similar result.
Chevron contends that Sawyer was unable to establish any retention of control by Chevron over McDonald Petroleum's business. In support of that contention, Chevron asserts there is no evidence that Chevron had any right to control the operation of McDonald Petroleum's trucks or its employees; McDonald Petroleum was not obligated to deliver only Chevron gasoline but was free to deliver the petroleum products of other producers. There is evidence in the record to support this contention. However, there is also evidence in the record that Chevron did retain some control over McDonald Petroleum. *Page 1266 
We perceive there to be a genuine issue of material fact presented regarding whether McDonald Petroleum was, in reality, free to deliver the gasoline and petroleum products of other producers. This question should be weighed against those logical inferences arising from the evidence that Chevron owned the real property, and the storage and loading facilities used by McDonald Petroleum. Those inferences must be considered along with the fact that McDonald Petroleum provided liability insurance for Chevron; Chevron's logos were painted on McDonald Petroleum's trucks and erected on signs placed on McDonald Petroleum's property; either party could terminate the contract on notice to the other; and McDonald Petroleum did not collect payment from the customer but received a commission from Chevron based on the products of Chevron which it delivered for Chevron. The question of whether Chevron was entitled to exclusive use of McDonald Petroleum's vehicles involves the same factors as the question of whether Chevron retained a reserved right to control McDonald Petroleum's operations. Where there is no direct evidence of right of control, the issue is to be determined by looking at the circumstances of the employment. The answer is for the trier of fact. TuscaloosaVeneer Co. v. Martin, 233 Ala. 567, 172 So. 608 (1937).
Under the facts here presented, and in the light of applicable controlling legal principles, previously stated, we opine that a jury question was presented and that the trial court erred in granting Chevron's motion for summary judgment. We therefore reverse the judgment below and remand this cause for trial as to Chevron.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and BEATTY, J., dissent.