442 So.2d 20 (1983)
Levon WILLIAMS, Administrator of the Estate of Rayford Williams, deceased, et al.
v.
TENNESSEE RIVER PULP AND PAPER COMPANY, et al.
82-632.
Supreme Court of Alabama.
September 30, 1983.
Rehearing Denied December 9, 1983.
James C. King of Wilson & King and Pat Nelson of O'Rear, Robinson & Nelson, Jasper, for appellants.
Carol A. Smith of Starnes & Atchison, Birmingham, for appellees.
*21 TORBERT, Chief Justice.
Appellants Levon Williams, James Stelman, and Frances Stelman initiated this action (as personal representatives of the Estates of Rayford Williams and Kathleen Marie Williams) against appellee Tennessee River Pulp and Paper Company ("Tennessee Paper"), claiming damages for the alleged wrongful death of Rayford and Kathleen Williams. Appellants alleged that Tennessee Paper was vicariously liable for these deaths. Appellants appeal from the trial court's order granting Tennessee Paper's motion for summary judgment. We affirm.
Tennessee Paper owns forest lands and a lumber mill in Alabama. As part of its operation, Tennessee Paper hires loggers to fell timber on the property and haul logs to its mill. Among the persons hired in 1978 was Rubel Lee Mauldin. Mauldin used his own truck, his own equipment, chose his own working hours, and hired his own employees. One of these employees was Melvin Ray Holley, who assisted Mauldin in both cutting and hauling timber. No social security deductions or other withholding taxes were taken from Mauldin's pay by Tennessee Paper, except for contractor liability insurance and workmen's compensation premiums deducted by Tennessee Paper and forwarded to an insurance carrier on Mauldin's behalf.
On April 19, 1978, Melvin Ray Holley was driving a truck owned by Mauldin and carrying logs belonging to Tennessee Paper when the left front hub and wheel of the truck suddenly came off. The hub and wheel struck a car in which Rayford and Kathleen Williams were riding, causing it to swerve into the path of oncoming traffic where it collided with another vehicle, killing the Williamses. Pre-trial discovery indicated that the wheel flew off as a result of continuous overloading and poor maintenance of Mauldin's vehicle.
The initial issue presented by Tennessee Paper's summary judgment motion is whether there is any genuine issue of material fact over Tennessee Paper's relationship with Mauldin; that is, did the evidence show, as a matter of law, that Mauldin was only an independent contractor of Tennessee Paper? If Mauldin was an independent contractor and not an employee, then Tennessee Paper is not responsible for his physical conduct under the doctrine of respondeat superior. See Restatement (Second) of Agency, §§ 2(3), 220 (1957).
On summary judgment, all reasonable inferences from the facts are viewed in favor of the non-movant; however, once the motion is supported as required by A.R.Civ.P., Rule 56(e), "the motion is to be granted unless the adverse party makes an evidentiary or factual showing in opposition to show that there is a genuine issue of fact for trial." Butler v. Michigan Mut. Ins. Co., 402 So.2d 949, 951 (Ala.1981).
In order to determine if Mauldin was an employee of Tennessee Paper, the crucial factor is the right of Tennessee Paper to control the manner of Mauldin's performance. Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). See Columbia Eng'g Int'l, Ltd. v. Epsey, 429 So.2d 955 (Ala.1983). "Control is not established if the asserted [employer] retains the right to supervise the asserted [employee] merely to determine if the [employee] performs in conformity with the contract." Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc., 28 Wash.App. 669, 674, 626 P.2d 30, 33 (1981). See Solmica supra, 285 Ala. at 398, 232 So.2d at 640.
Appellants argue that Tennessee Paper did have the right to control the manner of Mauldin's performance. Two types of evidence are presented. First, Tennessee Paper inspected the work site. These inspections were conducted to insure that Mauldin was complying with his contract. Appellants' brief paraphrases deposition evidence to the effect that "The main problem Tennessee had with its loggers was concerning the manner in which the loggers cut the trees; i.e., trees were cut small and sometimes were not cut." The only reasonable inference from this testimony is that the purpose of Tennessee Paper's inspections was to supervise conformity with contract requirements. Tennessee Paper *22 wished to make sure that small trees were not injured and that mature trees were harvested. Appellants' subtle implication that Tennessee Paper's inspections concerned "the manner in which the loggers cut the trees" is obviously not true. Tennessee Paper did not tell Mauldin how to cut or remove the trees; rather, Tennessee Paper supervised compliance with the contract specifications. Appellant cannot point to evidence showing that Tennessee Paper directed the manner of the work, offered advice on cutting and removal techniques, suggested changes in the work schedule, or attempted to supervise the manner of performance in any other way. Nor did Tennessee Paper reserve the right to control the manner of performance in its contract with Mauldin.
Appellants contend that Tennessee Paper knew the type and use of Mauldin's equipment. Such knowledge, without more, is insufficient to support an inference that Mauldin is an employee of Tennessee Paper. Indeed, Mauldin supplied all the equipment used, a factor which supports the finding of independent contractor status. See Restatement (Second) of Agency, § 220(2)(e) (1957).
By examining the relevant evidence, we cannot find a reasonable inference of a genuine issue concerning the alleged employment relationship between Tennessee Paper and Mauldin. The evidence conclusively establishes Mauldin as an independent contractor. Appellants attempt to show that these same facts arose in three other cases that found the existence of an employment relationship. Each case is distinguishable for a different reason. In Solmica, supra, this Court affirmed a jury's finding that John Cornelson, an aluminum siding applicator, was an employee of Solmica. Unlike the present case, the manager of Solmica "instructed Cornelson and the other applicators as to the way he wanted the siding applied...." 285 Ala. at 400, 232 So.2d at 642 (emphasis added). Solmica retained and exercised the right to control the manner of application, above and beyond contract specifications related to the final product. The control exercised in Solmica is clearly different from the inspections conducted by Tennessee Paper.
Sawyer v. Chevron U.S.A., Inc., 421 So.2d 1263 (Ala.1982), is also distinguishable, although for other reasons. In Sawyer, this Court reversed summary judgment, finding a genuine issue of material fact over whether McDonald Petroleum, a trucking company, was an employee of Chevron. Several major differences are apparent. First, the McDonald trucks bore the Chevron logo. Other courts have held that such advertising may establish a public representation of apparent authority and therefore create an employment relationship. See generally Gizzi v. Texaco, Inc., 437 F.2d 308 (3d Cir.1971); Sutton v. Chevron Oil Co., 85 N.M. 604, 514 P.2d 1301 (N.M.App.), aff'd, 85 N.M. 679, 515 P.2d 1283 (1973). No such representations were made by Tennessee Paper. More importantly, Chevron owned the facilities from which McDonald Petroleum conducted its business, limiting McDonald's independence. Tennessee Paper did not control Mauldin in such a manner. Finally, McDonald and the trucking employees described by the cases cited in Sawyer were on call at all times subject to the employer's direction.[1]See Cox v. Howard Hall Co., 289 Ala. 35, 37, 265 So.2d 580, 582 (1972); Stevens v. Deaton Truck Lines, 256 Ala. 229, 234, 54 So.2d 464, 469 (1951). The right to control another's time has been described as the quintessential ingredient of an employment relationship. See Seavey, Studies in Agency 220-22 (1949). Tennessee Paper had no right to control Mauldin's time. On each ground, Sawyer is materially different from the present case.
Finally, appellants rely on a number of workmen's compensation cases such as Davis-Day Timber Co. v. Gentry, 54 Ala. App. 385, 309 So.2d 97 (1975). Appellants suggest that the test of control relating to *23 such determinations necessarily must be the same in all cases. Such a position is legally incorrect. The workmen's compensation law is liberally construed to carry out the beneficent purposes of the act and to eliminate procedural technicalities. Sun Papers, Inc. v. Jerrell, 411 So.2d 790 (Ala. Civ.App.1981); Defense Ordinance Corp. v. England, 52 Ala.App. 565, 295 So.2d 419 (1974). The definition of employee has been gradually broadened to include borderline cases under workmen's compensation schemes. A. Larson, Workmen's Compensation, § 43.00 at 8-1 (1980). As Professor Larson of Duke has recognized, "the basic purpose for which the definition is used in compensation law is entirely different from the common-law purpose." Id. § 43.42 at 8-16 (emphasis in original). Therefore, Gentry and other workmen's compensation cases do not help this Court to ascertain the common law relationship between Tennessee Paper and Mauldin.
The second issue raised by appellants is whether Tennessee Paper may be held responsible for the Williamses' deaths because Mauldin's activities presented a peculiar risk of physical harm. The Restatement (Second) of Torts § 416 (1965) provides:
"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."
No Alabama case has formally adopted § 416[2] and we do not need to reach the issue in this case. Rather, we hold, as a matter of law, that the faulty maintenance of wheels and the hauling of pulp timber do not constitute a peculiar risk of physical harm which requires special precautions. Comment d. of § 416 illustrates our view:
"[I]f a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for."
Tennessee Paper may be responsible for special precautions to anchor a load of giant trees which constitute a peculiar risk, but it is not responsible for the independent contractor's compliance with simple maintenance procedures and load factors. See id. Hence, appellants cannot impose liability under § 416 upon Tennessee Paper under the facts in this case.
We hold that the trial court correctly granted summary judgment on the grounds of Mauldin's independent contractor status and liability under Restatement (Second) of Torts § 416 (1965). Therefore, we affirm.
AFFIRMED.
MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER and JONES, JJ., dissent.
*24 JONES, Justice (dissenting).
The reader will readily discern that the majority opinion, for all practical purposes, is virtually a carbon copy of the dissenting opinion in Sawyer v. Chevron U.S.A., Inc., 421 So.2d 1263 (Ala.1982). Both are authored by the Chief Justice. The Court's instant opinion overrules this Court's holdings in Sawyer; C.E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83 (1952); Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970); and Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608 (1937), as well as the Court of Civil Appeals' opinion in Davis-Day Timber Co. v. Gentry, 54 Ala.App. 385, 309 So.2d 97 (1975).
The only material distinction between this case and Sawyer is that in Sawyer the employee's truck door bore the employer's name "Chevron." Surely, the inference of "right of control" could not spring from this fact alone; nor does the majority so hold. The majority's suggested distinction that Chevron retained the right to control its employee's work schedule, which Tennessee Paper did not, is fallacious. Tennessee Paper hired Mauldin to cut and haul logs from its timber lands to its mill; and, for his failure to perform according to Tennessee Paper's expectation, Mauldin would be fired (in the language of the sawmill yard, "the boss done fired another sorry hand").
The majority strains at another distinction:
"More importantly, Chevron owned the facilities from which McDonald Petroleum conducted its business, limiting McDonald's independence. Tennessee Paper did not control Mauldin in such a manner."
As already noted, Tennessee Paper owned "the facilities from which [Mauldin] conducted [his] business"; indeed, Tennessee Paper owned every place relating to Mauldin's work except the public highway between the woods and the mill.
If anything, the distinction singled out by the majority between these facts and those in Solmica is even more telling:
"[T]he manager of Solmica `instructed Cornelson and the other applicators as to the way he wanted the siding applied....'"
This is as baseless as saying that, in the case of siding, the employer tells the worker to apply the composition material horizontally rather than vertically, while, in the case of a timber cutter, the employer tells the "saw hand" to cut the tree "down" instead of "up."
The majority misconstrues Solmica's rationale. Solmica's holding is grounded in the kind and nature of the work to be performed. The hiring of one person by another to do common labor, whether it be cutting and hauling logs, or delivering gasoline, or putting siding on a house, generates, from the very nature of such employment, an inference of inherent right of control. Evidence of payment by cord weight, permitting the employee to hire helpers, not deducting for social security and other taxes, and requiring the employee to furnish his own truck and saws merely create a contrary inference; but such self-serving restrictions do not overcome, as a matter of law, the employer's inherent right of control over such common laborers. To be sure, what other incidents of control would Tennessee Paper exercise over an hourly-wage employee than that right of control which it retained over Mauldin? The question is self-answering: There is no difference except for its labeling by the employer of independent contractor, which is not controlling.
In addition to this rationale (the right of control inherent in the kind and nature of certain employment), there is yet another subtle, but substantial, reason for this Court's prior holdings in cases of this kind. We need not take a public poll to know that the most feared of all vehicles on the highways of this State, and for good reason, is not the truck hauling explosives, or toxic chemicals, or even atomic wastes, but the old, overloaded, no-brakes, slick-tired, oneheadlight, no-taillights, uninsured log truck. This is not intended as a reflection *25 on those hard-working timber cutters who eke out a bare existence under these socalled independent contract arrangements, for they barely earn a minimum wage; but the vehicles which they operate on the public highways are moving accidents, looking for a place to happen. For an excellent description of this kind of employee's economic plight, see Professor Malone's Louisiana Workmen's Compensation Law and Practice, at p. 91, quoted in Malloy v. Buckner-Harmon Wood Contractors, 100 So.2d 242, 247 (La.App.1958):
"`We have previously observed that in these cases [log hauling] the complainant is nearly always without appreciable capital (apart from the truck or wagon which he usually owns) and that the rate of pay for this use is pretty well standardized. Likewise the hauler's job is integrated into the defendant's enterprise on a fairly stable basis and he is thus in a poor position to set a price that will cover the risk of personal injury.'"
Recognizing this stark reality, our Courts have refused to indulge the legal fiction that would insulate, as a matter of law, the real responsible party. It is ironic indeed that the only deduction taken from Mauldin's pay was for "contractor's" insurance coverage to protect Tennessee Paper from liability. Query: What liability? See Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757 (1939).
The most absurd effort by the majority to distinguish its holding from Tuscaloosa Veneer and Davis-Day is found in this language:
"[W]orkmen's compensation cases do not help this Court to ascertain the common law relationship between Tennessee Paper and Mauldin."
This statement is hardly deserving of a reply. Suffice it to ask: If Mauldin had been injured and had filed a claim for compensation benefits, can we take seriously the majority's suggestion that this Court's application of one employer/employee standard would affirm a workmen's compensation award in favor of Mauldin, but the application of another standard would affirm the trial court's order granting summary judgment adverse to the estates of the two persons killed by Mauldin's truck in the same accident? Such a word game reduces to a mockery what is intended by the liberal interpretation doctrine applicable to the Workmen's Compensation Act. The Louisiana Court of Appeals addressed this point in a nonworkmen's compensation context as follows:
"If economic status is a controlling, or at least a persuasive, influence in resolving claims between employer and employee, it should be accorded an equal weight in resolving liabilities toward the public generally. In other words, we are convinced that an employer, who is deemed liable to a claimant upon the principle that the claimant is an employee and not an independent contractor, should not be permitted to escape liability to third persons simply upon the basis of a conclusion that the same employee, with respect to the claims of such third persons arising from tort, should be classified as an independent contractor." Malloy v. Buckner-Harmon Wood Contractors, 100 So.2d at 247.
Because I would affirm well-established precedent and reverse and remand on the respondeat superior theory, I would not reach the Appellants' alternative theory based upon § 416, Restatement (Second) of Torts. The majority, by rejecting both theories, for all practical purposes, leave these and all prospective victims of such accidents remediless.
FAULKNER, J., concurs.
NOTES
[1] The accident upon which the suit in Sawyer was based occurred during a weekend and involved a McDonald employee who was called in to work to make a delivery.
[2] Even though we have not embraced § 416, we have adopted its general principles in an earlier case.

"An exception ... obtains where a duty to the public exists in the manner of executing the work undertaken by the contractor. Such duty exists when the execution of the work tends to create a nuisance; when it is dangerous within itself, as in blasting operations; when the work requires the creation of dangerous conditions, such as ditches and the like in a public highway; or generally when the maintenance of safe conditions in connection with the work is essential to protection of the public. In such case the chief contractor cannot transfer his public duty to a subcontractor. If the contractor places the performance of such duty in the hands of another, to that extent, that other is in law the mere agent, and the contractor is liable for his negligence."
Thomas v. Saulsbury & Co., 212 Ala. 245, 246-47, 102 So. 115, 116 (1924) (emphasis added).