This appeal is from a judgment entered in favor of Lucy R. Turner and against *Page 1016 
Southern Life and Health Insurance Company ("Southern") and Richard Perry for $500,000 in a fraud action. Southern and Perry argue that the judgment should be reversed because, they say, Turner failed to present sufficient evidence of fraud, and Southern argues that Turner failed to present evidence that it ratified the actions of Perry.
In January 1986, Perry was hired by Southern as a salesman. His duties included servicing a "debit route," wherein he traveled from house to house on a weekly basis to collect premiums from Southern's policyholders. Turner was one of the policyholders on Perry's route. In 1985 she had purchased a $1,500 life insurance policy on her aunt, Lucy Barrow, who was living with her at that time, naming herself as the beneficiary. We will refer to that policy as the Turner/Barrow policy. Southern had previously issued a policy on Barrow's life with a face value of $1,000, with Grace Banks, Barrow's daughter, as the beneficiary. That policy will be referred to as the Banks/Barrow policy. Turner paid the premiums on both of those policies at all times relevant to this action.
The testimony of Turner and that of Perry were in sharp conflict on almost every material fact regarding the course of their dealings. According to Turner's version of the facts, she paid the premiums that were due on both the Turner/Barrow policy and the Banks/Barrow policy on time up until the month that Barrow died, October 1986. She stated that, as far as she knew, those policies were in force at that time and had never lapsed. Turner stated that Perry never told her that the premium payments were behind or indicated that her policy was in danger of lapsing. That testimony was substantially corroborated by Turner's son, Alvin. Jonas Bowen, the Southern agent in charge of the debit route before Perry, testified that Turner had always made her payments on time when he was servicing the debit route. Bowen also testified that it was Southern's practice to assign to the debit agent the responsibility of notifying the owners of policies with face values of less than $10,000 when their policies lapsed.
Perry testified that Turner was frequently late with premium payments and sometimes skipped them altogether. He stated that, eventually, both the Turner/Barrow policy and the Banks/Barrow policy had lapsed and were in danger of being terminated. Perry stated that he made Turner aware of the status of those policies and recommended that she apply all of the overage[1] that had accumulated on both of the policies to the Banks/Barrow policy. According to Perry, he did not know that Turner was not the beneficiary of the Banks/Barrow policy. Perry testified that Turner agreed to his suggestion. Perry then applied the overage to the Banks/Barrow policy, but continued to collect premiums on both it and the Turner/Barrow policy.
After Barrow died, Turner told Perry that she wished to file a claim on the Turner/Barrow policy. According to Turner's testimony, Perry came by her home in November 1986 and gathered all of the documents in Turner's possession that related to that policy. She said that those documents included a premium receipt card, the only evidence held by Turner that showed that she had made her premium payments. Perry testified that he did not take any documents relating to the Turner/Barrow policy from Turner's home and that he told Turner that he could not file a claim on the policy because it had lapsed.
Turner further testified that for months she heard nothing regarding the status of her claim. In March 1987, Turner went to Southern's district office in Opelika and inquired about her claim. At that meeting she was told that Southern had no record of the Turner/Barrow policy or of her claim. According to Turner, Perry came to *Page 1017 
her home the following month and explained the reason for the delay. She testified that Perry told her that Southern did not have $1,500 to pay her claim, but that he and his "boss man" had agreed to pay Turner $500 a month for three months to satisfy her claim. The following month, according to Turner, Perry came to her home and gave her an envelope containing $500 in $20 bills and asked her if she was "satisfied." Turner's testimony concerning that visit by Perry, and the payment of $500, was corroborated by Alvin Turner and by Miller Ephraim, a family friend. Both men testified that they were present when Perry paid the $500, and both testified that they counted the money.[2]
Turner testified that the following day she and Ephraim went to the office of the Alabama Insurance Department in Montgomery. At that office, Turner said, she told Michael DeBellis of the Consumer Protection Division about her problems with Perry and Southern and showed him the envelope containing $500. She said that DeBellis told her he would look into her complaint, but that his investigation was dropped when DeBellis learned that Turner had retained a lawyer and filed an action against Perry and Southern.[3] This testimony was corroborated by DeBellis and Ephraim.
Perry denied offering to pay Turner $1,500 in installments and denied giving her $500 in May 1987.
Southern and Perry argue that they were entitled to a judgment notwithstanding the verdict on the grounds that Turner did not present sufficient evidence of each of the elements of fraud. Turner's complaint was filed on June 8, 1987, and was therefore subject to the "scintilla rule." Ala. Code 1975, §12-21-12 (Supp. 1989).
The elements of fraud are: (1) a misrepresentation (2) of a material fact (3) that was relied upon by the plaintiff, (4) who was damaged as a proximate result of the misrepresentation.Earnest v. Pritchett-Moore, Inc., 401 So.2d 752, 754
(Ala. 1981). The elements of fraud based on the suppression of material facts are: (1) a duty to disclose facts; (2) concealment or non-disclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury. Gary v. Kirkland,514 So.2d 970, 972 (Ala. 1987).
The trial judge presented Turner's claim to the jury with the following instruction:
 "[I]n order to make the defendant, Southern Life and Health Insurance Company liable for any misconduct of Richard Perry, the plaintiff has to reasonably satisfy you from the evidence . . . that Southern Life and Health, either authorized the wrongful conduct of Richard Perry, constituting the fraud, or if they didn't authorize it in advance, they must have ratified it after he did it. Ratification consisting of, number one, having knowledge of what he did, and with knowledge of what he did, they must have approved it, adopted it as their own, and accepted the benefits of it. And, without proving those things, Southern Life and Health Insurance Company cannot be held liable for the wrongful conduct of Richard Perry, even if you find he acted wrongly and committed the legal fraud."
Under that instruction, the jury could have properly returned a verdict against Southern only if it found that Perry's conduct was either authorized or ratified by Southern. There was evidence to support such findings. Under the instructions given to the jury, the trial court's denial of Southern's motion for J.N.O.V. was not error.
However, the instruction did not allow the jury to consider the theory of respondeat superior, which Turner requested the court to present to the jury. Under respondeat superior, a principal can be liable in *Page 1018 
tort for its agent's acts that are done within the scope of employment, either real or apparent, even though the principal did not authorize such acts or even expressly forbade them. No evidence of authorization or ratification is needed. That theory has been extended to cases where the fraud was committed for the agent's own benefit and to the principal's detriment.Pacific Mutual Life Ins. Co. v. Haslip, 553 So.2d 537
(Ala. 1989), cert. granted, ___ U.S. ___, 110 S.Ct. 1780,108 L.Ed.2d 782 (1990); Lawler Mobile Homes, Inc. v. Tarver,492 So.2d 297, 305 (Ala. 1986); Joyner v. AAA Cooper Transportation,477 So.2d 364, 365 (Ala. 1985).
Pursuant to Rule 50(d), A.R.Civ.P., the plaintiff has properly raised the issue of whether she was entitled to an instruction on the law of respondeat superior. We agree that such an instruction should have been given to the jury in this case. We note that had the jury returned a verdict on respondeat superior based on the evidence before us, that verdict would have been amply supported by the evidence.
In light of the fact that the relationship between agency and respondeat superior is often confused, we do believe that a comment on that relationship is appropriate. The distinction between the law of agency and the law of respondeat superior is subtle.
 "The general rule that a principal is liable for the torts of his agent is not grounded on agency principles. This is evident from the holdings that a principal may be held for his agent's tort committed in the course and scope of the agent's employment even though the principal does not authorize, ratify, participate in, or know of, such misconduct, or even if he forbade or disapproved of the act complained of. Fundamentally, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of an employer or master for the tortious act of his employee or servant. In both cases, the tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of 'respondeat superior' and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment."
3 Am.Jur.2d Agency § 280 at 783 (1986).
Alabama follows the rule stated in Am.Jur.2d. In Autrey v.Blue Cross Blue Shield of Alabama, 481 So.2d 345 (Ala. 1985), the Court stated:
 " ' "The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of 'respondeat superior,' not the principles of agency. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them." ' (Citations omitted.)"
Id. at 347-48 (citing National States Insurance Co. v. Jones,393 So.2d 1361, 1376 (Ala. 1980), and quoting from Old SouthernLife Insurance Co. v. McConnell, 52 Ala. App. 589, 594,296 So.2d 183, 186 (1974)). Based on the foregoing analysis, the Court in Autrey found that there was sufficient evidence to raise a factual issue that warranted reversing a summary judgment on the issue of whether a representative of the defendant insurance company was acting within the scope of his employment when he represented to the insurance applicant the effective date of coverage. See also, Craft v. United States,542 F.2d 1250, 1254-55 (5th Cir. 1976); Scott v. Great Atlantic Pacific Tea Co., 338 F.2d 661 (5th Cir. 1964); Pacific MutualLife Ins. Co. v. Haslip, 553 So.2d 537, 541-42 (Ala. 1989), cert. granted, ___ U.S. ___, 110 S.Ct. 1780, 108 L.Ed.2d 782
(1990); AVCO Corp. v. Richardson, 285 Ala. 538, 541-42,234 So.2d 556, 559-60 (1970); Perfection Mattress Spring Co. v.Windham, 236 Ala. 239, 182 So. 6 (1938); Hardeman v. *Page 1019 Williams, 150 Ala. 415, 418-21, 43 So. 726 (1907).
The above authorities make it clear that, under circumstances analogous to those in the present case, the actual basis of a principal's liability turns on the doctrine of respondeat superior. It follows that the rule that a principal may be held liable for the acts of his agent by ratifying them is a subpart of the broader rule of respondeat superior, which imputes liability to a principal (employer) for acts of an agent (employee) performed within the scope of the agent's (employee's) employment. In effect, the instruction given by the trial court on ratification required the plaintiff to meet a more stringent requirement of proof — proof of ratification rather than proof of action within the scope of employment. Further, in the context of the facts of this case, a scintilla of evidence sufficient to raise the issue of ratification also serves equally well, or better, to raise the issue as to whether Perry's action was within the scope of his employment by Southern. Because we find that there was a scintilla of evidence tending to show Southern's knowledge of or ratification of Perry's fraud, the trial court's error in failing to charge on respondeat superior was harmless, because the plaintiff was able to meet the heavier burden and the defendants were obviously not prejudiced. Holloway v.Robertson, 500 So.2d 1056 (Ala. 1986).
A motion for J.N.O.V. must be denied if there is a scintilla of evidence in support of the plaintiff's claims. Gadsden Paper Supply Co. v. Washburn, 554 So.2d 983 (Ala. 1989). In theGadsden Paper case, this Court stated:
 "A motion for J.N.O.V. is really just a reassertion of the motion for directed verdict. It is necessary to the success of a motion for J.N.O.V. that the moving party be entitled to a directed verdict at the close of the evidence. Wilson v. Draper, 406 So.2d 429, 432
(Ala.Civ.App. 1981). Moreover, if the nonmoving party has produced so much as a scintilla of evidence, then the motion for directed verdict or J.N.O.V. must be denied. Marion v. Hall, 429 So.2d 937, 943
(Ala. 1983).
 "In Elrod v. Ford, 489 So.2d 534, 537 (Ala. 1986), this Court stated the following rules:
 " 'To be entitled to either directed verdict or J.N.O.V., Defendant must have proved to the trial judge that, from the evidence before the court at the time each motion was made, there was "a complete absence of proof on a material issue or [that there were] no controverted questions of fact on which reasonable people could differ," and that Defendant was entitled to judgment as a matter of law. Deaton, Inc. v. Burroughs, 456 So.2d 771, 773 (Ala. 1984). Stated conversely, the motions for directed verdict and J.N.O.V. should not have been granted if reasonable inferences in favor of Plaintiffs' claims could have been drawn from the evidence or if there was any conflict in the evidence for resolution by a jury. O'Donohue v. Citizens Bank, 350 So.2d 1049 (Ala.Civ.App. 1977)." ' "
In his Hammond order,[4] the trial judge stated:
 "In most civil fraud cases there is a 'gray area' as to the commission of the alleged fraud; e.g., the necessity for the jury to interpret the meaning of the words or conduct of the person accused of the fraud, or to determine whether plaintiff's reliance was reasonable. In this case the factual issue of the commission of the fraud was simple and clear; either defendant Perry did it or he didn't. This presented a simple and unambiguous question of fact for the jury, and the jury found for the plaintiff. Whether defendant Southern Life authorized or ratified its agent's conduct was not so simple a question, but the jury was charged on this point and again decided in favor of plaintiff. While the evidence which would make defendant Southern Life liable was not as clear or as abundant as that implicating the agent, there *Page 1020 was nevertheless sufficient evidence to support a verdict against defendant Southern Life."
(Emphasis supplied.)
We agree with this conclusion by the trial judge. The jury heard evidence from the plaintiff and other witnesses tending to indicate Southern's knowledge of Perry's fraud. The plaintiff and other persons clearly testified that Perry came to her home and gave her $500 and that Perry told her that he and "his boss man" had decided to pay her $1500 over a three-month period. Such evidence supports the inference that Perry had communicated his fraud to his superiors, and that this payment scheme was an attempt to "hush" the plaintiff.
In addition, we note that the route lists that were maintained at Southern's corporate offices in Opelika clearly showed that Perry had diverted monies from the "overage" on the Turner/Barrow policy to the Barrow/Banks policy. Yet, when Turner's policy lapsed for failure to pay the premium, Southern provided no notice of lapse to Turner.
Turner testified that she went with Miller Ephraim to Southern's regional office in Opelika, Alabama, to inquire about the nonpayment of her claim on the "lapsed" policy. She was informed that the policy had lapsed and that no claim for benefits had ever been filed. Moreover, testimony showed that it was only after her inquiry at the Opelika office that Perry told her that he and "his boss man" would pay the plaintiff $500 a month for three months in settlement of her claim. We believe that the jury could reasonably infer from such evidence that Perry was notified of Turner's claim through the Southern office, and that therefore Southern was cognizant of and approved Perry's actions.
The above matters indicate at least a scintilla of evidence showing that Southern personnel had been informed of Perry's fraud and then schemed to conceal it by paying the plaintiff "hush money." It is axiomatic that one may not undo a fraud by subsequent acts. National States Ins. Co. v. Jones,393 So.2d 1361, 1367 (Ala. 1980).
Thus, for the reasons set out above, the judgment is affirmed.
AFFIRMED.
SHORES, ADAMS and KENNEDY, JJ., concur.
JONES and HOUSTON, JJ., concur in result.
MADDOX, J., concurs in part and dissents in part.
[1] "Overage" is the term Southern and Perry used to denominate funds paid by a policyholder who was attempting to become current on delinquent premium payments. Those funds would be held by the agent and set aside until the balance equalled the full amount owed on the policy. At that time it would be applied to the policy, which would then be considered back in force.
[2] Miller Ephraim died before the trial began. His testimony had been procured by deposition some months before his death.
[3] Turner's original complaint contained allegations of breach of contract, conversion, and fraud. However, only the fraud count was submitted to the jury.
[4] See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).