591 So.2d 33 (1991)
Janet D. TERRY, a Minor, By and Through her Mother and Next Friend, Peggy TERRY, and Peggy Terry, Individually
v.
PHILLIPS 66 COMPANY, INC., et al.
1901244.
Supreme Court of Alabama.
November 1, 1991.
*34 Robert B. Roden of Roden & Hayes, P.C., Birmingham, for appellant.
William L. Middleton of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellees.
KENNEDY, Justice.
Janet Terry, through her mother and next friend, Peggy Terry, and Peggy Terry, individually, filed an action against Phillips 66 Company, Inc. ("Phillips 66"), Terry & Young Oil Co., Inc. ("Terry & Young"), Billy Glenn Terry, Culver's Quick Stop, Pauline Culver, and Junior Culver, alleging that the defendants' negligence or wantonness had caused Janet's personal injuries. The trial court entered a summary judgment for Phillips 66, Terry & Young, and Billy Glenn Terry and made those judgments final pursuant to Rule 54(b), A.R.Civ.P. In this appeal, Janet argues that the trial court erred by entering a judgment for Terry & Young and Billy Glenn Terry; she makes no arguments in relation to Phillips 66.
In Stephens v. City of Montgomery, 575 So.2d 1095, 1097 (Ala.1991), we stated the following about summary judgment proceedings:
"The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
"`The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'
"The burdens placed on the parties by this rule have often been described:
"`The burden is on one moving for summary judgment to demonstrate *35 that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'
Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985).
"In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Sanders v. Kirkland & Co., 510 So.2d 138 (Ala.1987)."
Because this case was not pending on June 11, 1987, Ala.Code 1975, § 12-21-12, the plaintiffs must prove their case by "substantial evidence," which this Court has defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). The trial court's ruling on a summary judgment motion is a nondiscretionary ruling, and no presumption of correctness attaches to that ruling; accordingly, our review of the evidence properly presented in the record is de novo. Hightower & Co. v. United States Fidelity & Guaranty Co., 527 So.2d 698 (Ala.1988).
Janet and Peggy Terry contend that Janet was injured as a result of Junior Culver's smoking a cigarette while he pumped gasoline into the vehicle in which Janet was a passenger. According to the Terrys, the cigarette ignited the gasoline, which exploded, causing Janet Terry second and third degree burns. They contend that Billy Glenn Terry and Terry & Young are liable for Junior Culver's actions under the doctrine of respondeat superior.
The following facts are undisputed: Billy Glenn Terry is an employee of Terry & Young. Terry & Young own the land and the building where Janet's injury occurred, and it leased the land and building to Junior Culver, who operated Culver's Quick Stop on those premises. Neither Culver nor any of his employees were employed by Terry & Young or Billy Glenn Terry. Billy Glenn Terry was not on the premises when the accident occurred.
The Court has addressed the law applicable to this case in Sawyer v. Chevron U.S.A., Inc., 421 So.2d 1263 (Ala.1982), and Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986).
In Sawyer, Sawyer brought an action against Chevron U.S.A., Inc. ("Chevron"), for injuries he sustained in an automobile collision. Sawyer was injured when a truck, which was driven by an employee of McDonald Petroleum Company, collided with the rear of an automobile in which Sawyer was a passenger. Sawyer alleged that McDonald Petroleum was Chevron's agent. The trial court entered a summary judgment for Chevron, and Sawyer appealed.
The Court, after a detailed factual analysis, reversed the judgment for Chevron, holding that there was a factual issue suitable for jury determination, which precluded summary judgment. 421 So.2d at 1266. As to the law regarding a master-servant relationship, the Court wrote:
"Sawyer contends the facts in this case are sufficient to present a jury question as to whether there existed a relationship of master and servant between Chevron and McDonald Petroleum....
"There is little doubt that the controlling question in this case is the relationship of McDonald Petroleum to Chevron. The test to be used in determining such relationship is whether Chevron had a reserved right of control over the means and agencies by which the work was done or the result produced, not the actual exercise of such control. Tuscaloosa *36 Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608 (1937)."
421 So.2d at 1264.
In Wood, Harrison Wood filed an action against Shell Oil Company ("Shell") to recover damages for injuries he sustained when he slipped and fell on the premises of Parker Shell, which is apparently a gasoline service station. Wood contended that Parker Shell was an agent of Shell, and the Court addressed the existence of an agency relationship between the two. After a factual analysis as detailed as the analysis in Sawyer, the Court affirmed the summary judgment. As to the law to be applied, the Court wrote:
"The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance."
495 So.2d at 1036.
Janet and Peggy Terry contend that Sawyer and Wood reach contrary results on virtually the same facts and that the rationale in Sawyer is appropriate, but the rationale in Wood is due to be rejected. To explain the difference in Sawyer and Wood, which at first glance admittedly appear to reach contradictory results on similar facts, would require a full-blown, painstaking factual comparison of the two cases. We find it unnecessary to make such a comparison, however, because the law regarding respondeat superior pertinent to the resolution of this case given by both Sawyer and Wood is the same, and we can resolve this case by applying its facts to the undisputed law.
The test to be used in determining whether Billy Glenn Terry or Terry & Young are liable for Junior Culver's actions under the doctrine of respondeat superior is whether they reserved a right of control over the manner in which Culver performed his jobthat is, whether they reserved a right of physical control over the means and agencies by which the work was done or the result produced. Sawyer; Wood.[1]
The plaintiffs argue that the following evidence indicates that the defendants reserved a right of control over the manner of Culver's performance: Terry & Young owned the building and the property on which the gasoline service station was located; Terry & Young owned and maintained the gasoline tanks located on the property; the gasoline was furnished by Terry & Young, which determined the price of the gasoline; Culver received from Terry & Young a commission of six cents per gallon of gasoline sold; Terry & Young reserved the right to restrict Culver from selling the gasoline products of other oil companies and paid the taxes on the gasoline sales; and a Terry & Young representative collected the money from the gasoline sales each week.
None of that evidence even addresses Billy Glenn Terry, and the plaintiffs present no additional evidence for their claims against him. We question whether, for the purposes of the plaintiffs proving liability under respondeat superior, that evidence is relevant and material to show that Terry & Young reserved a right of control over the manner of Culver's performance, Sawyer, Wood; in any event, the plaintiffs have not proven by substantial evidence that Terry & Young are liable under the doctrine of respondeat superior for Culver's *37 actions.[2] Accordingly, the plaintiffs failed to prove that either Billy Glenn Terry or Terry & Young should be held liable under the doctrine of respondeat superior for Culver's actions. They make no other arguments for a principal-agent relationship. The trial court did not err in entering a summary judgment for Billy Glenn Terry and for Terry & Young. The judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES and HOUSTON, JJ., concur.
HORNSBY, C.J., concurs specially.
HORNSBY, Chief Justice (concurring specially).
Although I concur in the foregoing opinion, I write specially to amplify the discussion concerning the doctrine of respondeat superior. In Southern Life & Health Ins. Co. v. Turner, 571 So.2d 1015 (Ala.1990), vacated Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), affirmed on remand, Southern Life v. Turner, 586 So.2d 854 (Ala.1991), this Court provided a full discussion of the doctrine of respondeat superior. Although the United States Supreme Court vacated the original opinion in Southern Life with respect to punitive damages, I believe that the discussion of respondeat superior is still the best statement of our law on that doctrine.
"Under respondeat superior, a principal can be liable in tort for its agent's acts that are done within the scope of employment, either real or apparent, even though the principal did not authorize such acts or even expressly forbade them. No evidence of authorization or ratification is needed. That theory has been extended to cases where the fraud was committed for the agent's own benefit and to the principal's detriment. Pacific Mutual Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), cert. granted, 494 U.S. 1065, 110 S.Ct. 1780, 108 L.Ed.2d 782 (1990); Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala.1986); Joyner v. AAA Cooper Transportation, 477 So.2d 364, 365 (Ala.1985).
"....
"In light of the fact that the relationship between agency and respondeat superior is often confused, we do believe that a comment on that relationship is appropriate. The distinction between the law of agency and the law of respondeat superior is subtle.
"`The general rule that a principal is liable for the torts of his agent is not grounded on agency principles. This is evident from the holdings that a principal may be held for his agent's tort committed in the course and scope of the agent's employment even though the principal does not authorize, ratify, participate in, or know of, such misconduct, or even if he forbade or disapproved of the act complained of. Fundamentally, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of an employer or master for the tortious act of his employee or servant. In both cases, the tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of "respondeat superior" and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment.'
"3 Am.Jur.2d Agency § 280 at 783 (1986).
"Alabama follows the rule stated in Am.Jur.2d. In Autrey v. Blue Cross & Blue Shield of Alabama, 481 So.2d 345 (Ala.1985), the Court stated:
"`"`The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of "respondeat superior," not the principles of agency. The factual question to be determined is whether or not the act complained of was done, *38 either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them.'" (Citations omitted.)'
"Id. at 347-48 (citing National States Insurance Co. v. Jones, 393 So.2d 1361, 1376 (Ala.1980), and quoting from Old Southern Life Insurance Co. v. McConnell, 52 Ala.App. 589, 594, 296 So.2d 183, 186 (1974)). Based on the foregoing analysis, the Court in Autrey found that there was sufficient evidence to raise a factual issue that warranted reversing a summary judgment on the issue of whether a representative of the defendant insurance company was acting within the scope of his employment when he represented to the insurance applicant the effective date of coverage. See also, Craft v. United States, 542 F.2d 1250, 1254-55 (5th Cir.1976); Scott v. Great Atlantic & Pacific Tea Co., 338 F.2d 661 (5th Cir.1964); Pacific Mutual Life Ins. Co. v. Haslip, 553 So.2d 537, 541-42 (Ala. 1989), cert. granted, 494 U.S. 1065, 110 S.Ct. 1780, 108 L.Ed.2d 782 (1990); AVCO Corp. v. Richardson, 285 Ala. 538, 541-42, 234 So.2d 556, 559-60 (1970); Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6 (1938); Hardeman v. Williams, 150 Ala. 415, 418-21, 43 So. 726 (1907).
"The above authorities make it clear that, under circumstances analogous to those in the present case, the actual basis of a principal's liability turns on the doctrine of respondeat superior. It follows that the rule that a principal may be held liable for the acts of his agent by ratifying them is a subpart of the broader rule of respondeat superior, which imputes liability to a principal (employer) for acts of an agent (employee) performed within the scope of the agent's (employee's) employment."
571 So.2d at 1017-19. The plaintiffs in the instant case have not proven that the doctrine of respondeat superior should apply in this case because the plaintiffs have presented no substantial evidence of an employment relationship. The facts are that the relationship in question is one of a lessee/lessor and licensee/licensor for the use of property, and liability cannot be imputed to a lessor on a theory of respondeat superior.
NOTES
[1] As a reminder to the bench and bar of the analytical underpinnings involved in this analysis, we note that a master-servant relationship is a subgroup of principal-agent relationships; a master is a subspecies of principal and a servant is a subspecies of agent. Generally, a principal is not liable for the physical harm caused by his agents, if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to act with due care. Restatement (Second) of Agency, § 250 (1958). However, in a master-servant relationship, the master may be liable for physical harm caused by his agents. Id., §§ 250 and 251. To establish a principal-agent relationship requires proof generally that the alleged agent acted on the principal's behalf; but to establish a master-servant relationship requires proof of control by the master. See Wood v. Holiday Inns, 508 F.2d 167 (5th Cir.1975). At times, Sawyer may have failed to make the distinction, 421 So.2d at 1264, but its discussion in terms of the test for determining a master-servant relationship is proper.
[2] Wood and Sawyer were decided pursuant to the "scintilla rule" of evidence.