HOUSTON, Justice.
Dr. E. Dodd Ozment and his professional corporation appeal from a judgment based on a jury verdict in favor of the plaintiffs, Margie Wilkerson and her husband Gary Wilkerson. We affirm.
*5 Mrs. Wilkerson suffers from Crohn’s disease, a chronic ailment that affects the colon and small intestine. She was hospitalized after a serious “flare up” of that disease. Part of the treatment for the disease is to allow the patient’s gastrointestinal system to rest, and that means that the patient cannot eat. Instead, the patient is given a concentrated caloric solution intravenously.
To deliver the needed nutritional solution, Dr. Ozment needed to place a central venous catheter into Mrs. Wilkerson’s body. His practice had always been to insert such a catheter into the right atrium. He inserted a needle into Mrs. Wilkerson’s right subclavian vein and threaded a guide wire through that vein and on into the superior vena cava. Dr. Ozment then inserted the catheter over the guide wire, and removed the guide wire.
Apparently, either the catheter or the guide wire punctured Mrs. Wilkerson’s peri-cardial sac. The puncture resulted in a condition known as cardiac tamponade, caused by the accumulation of fluids in the pericardial sac. Mrs. Wilkerson required emergency surgery to correct this condition and to repair the puncture. The surgery left a large and permanent scar over Mrs. Wilkerson’s sternum; the scar is typical of those left by open-heart surgery.
As a result of the treatment, Mrs. Wilkerson and her husband filed a medical malpractice action against Dr. Ozment and Surgeons of Mobile, P.C. Mrs. Wilkerson sought damages for the alleged malpractice, and Gary Wilkerson alleged a loss of consortium. The jury returned a verdict for the Wilkersons, including $36,000 for Mrs. Wilkerson’s past damages, $74,000 for her future damages, and $675 for Mr. Wilkerson’s loss of consortium. See § 6-5-543(a), Ala.Code 1975.
A jury’s verdict will be presumed correct and will not be disturbed on appeal unless it is plainly erroneous or manifestly unjust. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). Because the jury returned a verdict for the Wilkersons, any disputed questions of fact must be resolved in their favor, and we must presume that the jury drew from the evidence any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala.1993).
Dr. Ozment inserted the catheter into the right atrium. After inserting the catheter, he ordered a chest X-ray to determine the position of the catheter. The X-ray report stated:
“There is a central venous catheter entering from the right subclavian and the tip of the catheter is projected [into] the superior vena cava. The end of the catheter appears to be slightly turned back on itself on the end, and it may be lodged against the wall of the atrium.”
Dr. Ozment and several other defense witnesses testified that it was acceptable medical practice to place the catheter either in the superior vena cava or in the right atrium of the heart. Dr. John McAtee testified that he would have preferred to place the catheter in the right atrium rather than in the superior vena cava. However, the plaintiff’s expert, Dr. John W. Moore, testified that the tip of the catheter should be in the superior vena cava and should not extend into the heart. Dr. Moore also stated that placing the tip of the catheter in the atrium, or against, the wall of the atrium, was a deviation from the standard of care, skill, and diligence ordinarily exercised by a similarly situated physician in the same line of practice under the same or similar circumstances.
Dr. Moore further testified that having the tip of the catheter lodged against the wall of the atrium presented a great danger to Mrs. Wilkerson. He explained that Dr. Ozment could have, and should have, “withdraw[n] the catheter a little and recheck[ed] the X-ray to see if the bent area had been straightened and if the tip was clearly above the level of the right atrium.” Dr. Moore also stated that “the intravenous central line perforated the right atrium and caused cardiac tampo-nade,” the condition that caused Mrs. Wilkerson to have to undergo the emergency surgery.
Dr. Moore is, like Dr. Ozment, a practicing general surgeon, and he had inserted this type of catheter himself on numerous occasions. He had practiced surgery for 30 years. Dr. Moore was a “similarly situated *6 health care provider” under § 6-5-548(a), Ala.Code 1975, and therefore, was qualified to testify as an expert.
“In performing professional services for a patient, a physician’s, surgeon’s, or dentist’s duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case.”
§ 6-5-484(aj, Ala.Code 1975.
Dr. Moore’s testimony provided sufficient evidence from which the jury could determine that Dr. Ozment had inserted the catheter incorrectly and had thereby breached his duty of care to Mrs. Wilkerson. This testimony also provided the substantial evidence necessary to establish a prima facie case of medical malpractice. Furthermore, the evidence could reasonably have supported the jury’s award of future damages, and there was no plain error or manifest injustice in the award of $74,000. See, Alpine Bay Resorts, supra.
Dr. Ozment argues that the trial court erred by admitting into evidence a package insert from a brand of catheter other than that used on Mrs. Wilkerson, and by admitting a bulletin from the Food and Drug Administration. Both of these documents specifically warned against inserting a central venous catheter into the right atrium, but neither could be construed as the testimony of a surgeon “in the same general line of practice.” We specifically decline to rule on whether these two pieces of evidence, standing alone, would have been sufficient to support the jury’s verdict, or whether they would even have been admissible without the corroborating testimony from Dr. Moore.
However that may be, the two documents were introduced only as evidence to support Dr. Moore’s conclusions that Dr. Ozment had inserted the catheter improperly and that the improper insertion was the cause of Mrs. Wilkerson’s injuries. The two documents did not purport, by themselves, to establish the standard of care for physicians using central venous catheters. Instead, they were used to bolster Dr. Moore’s statements, and the trial court’s pre-trial order specifically stated that the FDA bulletin would be admitted only if it was shown to qualify as a learned treatise. In the trial court’s opinion, it did, and Dr. Ozment has not shown that the trial court abused the wide discretion afforded it in evidentiary matters.
Dr. Ozment also argues that the trial court erred in admitting mortality tables into evidence because, he argues, there was no evidence from which the jury could conclude that there was a permanent injury. See, Drummond Co. v. Self, 622 So.2d 336 (Ala. 1993). On the contrary, however, the jury was shown photographs of the scar left by the surgery, and the jury could reasonably have concluded that the scar constituted a permanent injury. Therefore, the court did not err in admitting the mortality tables.
Dr. Ozment’s final argument is that he is entitled to a new trial because the plaintiffs attorney asked the jury to “send a message.” However, Dr. Ozment’s attorney objected when the plaintiffs attorney made that statement, and the court sustained the objection. There was no error. His attorney did not ask for a curative instruction, nor for an explanation from the trial judge. The trial judge did exactly what Dr. Ozment asked.
Because we find no error in the trial of this case, we affirm the judgment based on the jury’s verdict for the Wilkersons.
AFFIRMED.
HORNSBY, C.J., and ALMON, KENNEDY and INGRAM, JJ., concur.