MONROE, Judge.
James Cope sued Coastal Bail Bonds, Inc., Bruce James, Mark Ivey, and Kevin Herrin alleging that the three men, as agents or employees of the bail bond company, used unnecessary and excessive force against him in their pursuit of another man who had jumped bail. Cope specifically made claims of willful trespass, assault and battery, intentional infliction of emotional distress, negligence, and wantonness against the defendants. Mark Ivey and Kevin Herrin could not be found, and the two were dismissed from the case for lack of service. The case proceeded against Coastal and James. James did not attend the trial or give testimony in the case, but he was represented at trial by his attorney, who also represented Coastal. After hearing the evidence, the jury returned a verdict in favor of Cope, awarding him $35,200 for damages. The trial court entered a judgment on the jury verdict, and Coastal and James appeal.
The record shows that one of Coastal Bail Bond’s agents, Mark Ivey, had written a bond for Billy McLain. When McLain failed to make a court appearance, Ivey, James, and Herrin searched for him so that Coastal would not have to forfeit the bond. While searching for McLain during the early hours of March 19, 1992, James, Ivey, and Herrin went to Cope’s house, and with guns drawn, broke down the door. The men yelled, “We’ve got you now, Billy,” and held Cope at gunpoint. Cope repeatedly told the men he was not McLain and that he did not know McLain. After a time, Cope was able to convince the men to let him show them his driver’s license to prove he was not McLain. After seeing the driver’s license, the three finally relented and left Cope’s house. Cope immediately called the Sheriffs Department to report the incident. About an hour later, a sheriffs deputy arrested the three at a convenience store and removed several weapons from the men. The men told the deputy that they were working for Coastal and were searching for McLain, who had jumped bail. The three were prosecuted for reckless endangerment.
Coastal first contends that the trial court erred in not granting its motions for directed verdict at the close of either the plaintiffs ease or at the close of all the evidence presented at trial. Specifically, Coastal argues, Cope had not presented sufficient evidence to support a finding that James, Ivey, and Her-rin were acting within the line and scope of their authority as agents or employees of Coastal when they acted against Cope.
In reviewing motions for a directed verdict, this court uses the same standard that the trial court does in granting or denying the motion. Floyd v. Broughton, 664 So.2d 897 (Ala.1995). Granting a motion for a directed verdict “is proper ‘only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ’ and the moving party is entitled to judgment as a matter of law.” Id. at 899 (quoting Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988)).
In his complaint, Cope alleges that the bounty hunters were acting within the scope of their authority as agents of Coastal Bail Bonds, Inc., or as employees or servants of the bail bond company.
*50 In Southern Life & Health Ins. Co. v. Turner, 571 So.2d 1015, 1018 (Ala.1990), judgment vacated, 500 U.S. 901, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991), affirmed on remand, 586 So.2d 854 (Ala.1991), the Alabama Supreme Court stated “that the relationship between agency and respondeat superior is often confused” because the “distinction between the law of agency and the law of respondeat superior is subtle.” In discussing that relationship, the Supreme Court held:
“‘The general rule that a principal is liable for the torts of his agent is not grounded on agency principles. This is evident from the holdings that a principal may be held [liable] for his agent’s tort committed in the course and scope of the agent’s employment even though the principal does not authorize, ratify, participate in, or know of, such misconduct, or even if he forbade or disapproved of the act complained of. Fundamentally, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of an employer or master for the tortious act of his employee or servant. In both cases, the tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of ‘respondeat superior’ and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment.’ ”
571 So.2d at 1018, quoting 3 Am.Jur.2d Agency § 280 at 783 (1986). See also, Pryor v. Brown & Root USA, Inc., 674 So.2d 45 (Ala.1995).
In Autrey v. Blue Cross & Blue Shield of Alabama, 481 So.2d 345 (Ala.1985), the Alabama Supreme Court stated:
“ ‘ “The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of ‘respondeat superior,’ not the principles of agency. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them.” ’ (Citations omitted.)”
481 So.2d at 347-48, quoting National States Ins. Co. v. Jones, 393 So.2d 1361, 1367 (Ala. 1980) (quoting in turn from Old Southern Life Ins. Co. v. McConnell, 52 Ala.App. 589, 594, 296 So.2d 183, 186 (1974)).
The record shows that at least one of the bounty hunters, Mark Ivey, wrote bonds for Coastal in addition to acting as “bounty hunter.” The company president, Thomas Godwin, testified that at the time of the incident with Cope, Ivey had worked with Coastal as an “independent bail writer” for at least eight months. He also said that Ivey worked with Coastal for more than a year. Records showed that Coastal paid Ivey $36,-000 in 1991; however, Godwin also said that Ivey only went out about once a week to pick up someone who had jumped bail, and that he got about $50 for such a job. Ivey apparently earned the rest of the money as commissions for bonds he wrote for Coastal.
The record also shows that Godwin was evasive when responding to questions regarding payment of agents, employment of agents, termination of agents, and other aspects of the employment of the “independent bail writers.” His answers seemed calculated to avoid liability under an agency theory. At one point during Godwin’s questioning, in fact, the trial court pointed out to Godwin that his answers had been evasive and inconsistent and reminded him that he was under oath. The trial court also told Godwin that if he did not tell the truth, the court would ask the district attorney to indict him for perjury.
As to the termination of the agents involved in the incident with Cope, while God-win’s responses could be described as equivocal at best, he did say that he reprimanded Ivey after the incident. None of the three men involved in the incident with Cope testi- *51 fled at trial. However, other witnesses, including Cope and the sheriffs deputy who arrested the three, testified that they said they worked for Coastal. Additionally, God-win’s testimony indicated that Coastal set the standard for determining when someone was to be picked up for jumping bail.
The trial court and jury saw the witnesses testify and had the opportunity to observe the witnesses’ demeanors. Often, what is not said, or the manner in which something is said, can be as important as the witness’s words as they appear in the record. The jury was free to disbelieve Godwin’s testimony, and draw logical inferences from his evasive and cagey answers. The question of agency is one for a jury to answer. Joseph Land & Co. v. Gresham, 603 So.2d 923 (Ala. 1992). Cope presented sufficient evidence from which a jury could reasonably determine that at least one of the three bounty hunters, Ivey, was an agent of Coastal. There also is sufficient evidence from which a jury could determine that the incident with Cope was carried out within the scope of the bounty hunters’ employment with Coastal. Therefore, the trial court did not err in denying Coastal’s motions for a directed verdict.
Coastal and James also maintain that the trial court demonstrated a clear bias in favor of the plaintiff, Cope, especially in the trial court’s own questioning of Coastal’s president, Godwin. The alleged bias, they say, caused prejudice against the defendants to the point that a new trial is warranted. By Coastal’s and James’s own admission, they did not raise this issue at trial. Therefore, this issue has not been properly preserved and is not properly presented for appellate review. McAliley v. McAliley, 638 So.2d 10 (Ala.Civ.App.1994).
Coastal and James argue that the trial court erred in allowing the deputy sheriff who arrested James, Ivey, and Herrin to testify that they told him they were employed by Coastal. Such evidence, they say, was inadmissible hearsay. Coastal and James cite no authority in support of their contention. When an appellant fails to comply with Rule 28(a)(5), Ala. R.App. P., this court will affirm the judgment of the trial court. Harris v. Harris, 528 So.2d 866 (Ala. Civ.App.1988). “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” ANCO TV Cable Co. v. Vista Communications Ltd. Partnership I, 631 So.2d 860, 864 (Ala.1993).
Coastal and James also raise several issues regarding damages. First, they contend, the trial court erred in refusing their request to provide a jury verdict form separating compensatory and punitive damages, pursuant to § 6-11-1, Ala.Code 1975. The jury assessed Cope’s damages at $35,200. However, because it had only a general verdict form, it did not designate what portion of that amount was for compensatory damages and what portion, if any, was for punitive damages. A general verdict such as the one in this case prevents this court from considering whether the award is excessive.
In City Realty, Inc. v. Continental Casualty Co., 623 So.2d 1039 (Ala.1993), the Alabama Supreme Court was faced with a similar situation. In City Realty, a fraud case, the jury awarded the plaintiffs $300,000. When discussing the correctness of the award, the Supreme Court wrote,
“If the jury verdict of $300,000 would have been supported by the evidence in any event, then our inability to review it in terms of specific punitive damages or compensatory damages would be of no meaningful consequence. So too, it would be harmless error that the trial court failed to comply with Ala.Code § 6-11-1 (Supp. 1988) [regarding itemizing damages]....
“Although we would hold that some $300,000 combinations of compensatory damages and punitive damages would be supported by the evidence in this case, we would hold for example, that an award of $300,000 compensatory damages — which the jury might have intended as its award — would not be supported by the evidence.”
Id. at 1045^6.
In this case, we hold that the evidence supports the damages awarded in this case in any event. Three armed men working for Coastal broke down the door to *52 Cope’s home in the early hours of the morning. One of the bounty hunters was wielding what appeared to be a pump shotgun. Another held a gun to Cope’s head. For a time, despite Cope’s assertions that he was not the man they were looking for, the bounty hunters refused to put their guns away or ease up on Cope. Cope testified that since that night, he has had trouble sleeping. He also testified that the damage to his home as a result of the men breaking down his door was $200.
An award of $35,000 for Cope’s emotional distress and mental anguish clearly is supported by the evidence. Likewise, an award of $35,000 as punitive damages is supported by the evidence. Obviously, since both extremes of compensatory and punitive damages are supported by the evidence, any combination of the two also is supported by the evidence. Therefore, although using an itemized verdict form as outlined in § 6-11-1 would have been the better practice in a case like this one, any error committed by the trial court in providing the jury with only a general verdict form would be harmless error. See City Realty, Inc., 623 So.2d 1039. The judgment of the trial court will not be reversed for harmless error. Rule 61, Ala. R. Civ. P. and Rule 45, Ala. R.App. P.
The appellants also argue that the trial court erred in failing to enter an order pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986) as to whether the punitive award is excessive. We first note that Coastal and James have provided this court with no argument concerning whether the jury award is excessive. In them brief, it seems that they are requesting a Hammond hearing merely for the sake of having a hearing and not because of any real assertion that the punitive damages awarded in this case are excessive.
Also, the trial court did set a hearing on Coastal’s and James’s motion for a new trial, or in the alternative, for remittitur, pursuant to Rules 50 and 59, Ala. R. Civ. P. Rule 59.1 requires such post-trial motions to remain pending only 90 days unless all parties consent to an extension, or unless extended by the proper appellate court, and for good cause shown. At the request of Coastal and James, however, the hearing was continued. Coastal and James did not request an extension of the 90-day period from this court, apparently they did not ask the other party to consent to an extension, and they did not request that the trial court set another hearing date. There is nothing in the record to indicate that Coastal and James filed briefs in support of their motion. Thus, the motion for new trial, or, in the alternative, remitti-tur, was denied by operation of law. The hearing was put off at the request of Coastal and James, and then they failed to take any action which would have allowed the trial court to act on their motion. They cannot now claim error by the trial court in failing to hold a Hammond hearing. Coastal and James contend that the method by which punitive damages are assessed in Alabama violates the United States Constitution. However, both the United States Supreme Court and the Alabama Supreme Court have upheld the constitutionality of Alabama’s method of assessing punitive damages. See, Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); see also, TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). This argument is without merit.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.
ROBERTSON, P.J., concurs in the result.
CRAWLEY, J., dissents.