MOORE, Chief Justice.
Elaine Dees sued Guyoungtech USA, Inc. (“Guyoungtech”), in the Conecuh Circuit Court, alleging retaliatory discharge. See § 25-5-11.1, Ala.Code 1975. A jury awarded Dees $1 million in compensatory damages and $2.5 million in punitive damages. The trial court denied Guyoung-tech’s posttrial motion for a judgment as a matter of law (“JML”) or, alternatively, for a new trial but remitted the awards to $300,000 in compensatory damages and $900,000 in punitive damages, which Dees accepted. Guyoungtech appeals. Because we conclude that Guyoungtech is entitled to a new trial, we do not address the denial of its motion for a JML.

I. Facts

Guyoungtech manufactures automotive parts for Hyundai Motors Manufacturing Alabama (“EMMA”) at a plant in Castle-berry. On November 17, 2010, Guyoung-tech hired Dees, who was then 28 years old, to inspect parts shipped to the plant from South Korea. Dees worked a 12-hour shift from 6:30 a.m. to 6:30 p.m. six days a week and was paid a base rate of $9.25 per hour.
On March 14, 2011, nearly four months after being hired, Dees fell and injured her left wrist while performing her job. Guy-oungtech sent Dees to Dr. Mark Roberts for an examination. She returned to work in a partial cast but was able to use her left hand and arm. At a follow-up visit on April 4, Dr. Roberts placed Dees’s left arm in a splint, referred her to an orthopedic specialist, and ordered that she work no more than eight hours a day and not lift more than three pounds. As a result, when she returned to work on April 5, Dees could effectively work with only one arm. On April 6, Dees was laid off.
Previously, on October 23, 2010, citing receipt of “a lot of defective parts” from Guyoungtech, HMMA had informed Guy-oungtech that it would be reducing its orders of the affected parts by 50% and acquiring those parts from other suppliers. To compensate for this loss of business, Guyoungtech reduced its workforce through layoffs and attrition from 300 employees in November 2010 to 212 in May 2011. Guyoungtech contends that Dees was laid off as part of this reduction in force and not because she had applied for worker’s compensation benefits.

II. Standard of Review

“In a motion for a new trial, the movant normally tests the weight of the evidence, not its sufficiency.” Shadwrick v. State Farm Fire & Cas. Co., 578 So.2d 1075, 1077 (Ala.1991). The trial court’s ruling on a motion for a new trial “should not be disturbed on appeal unless the record plainly and palpably shows that the trial court erred and that some legal right has been abused.” McBride v. Sheppard, 624 So.2d 1069, 1070-71 (Ala.1993). “[W]e review a ruling on a question of law de novo.” Parker Bldg. Servs. Co. v. Lightsey, 925 So.2d 927, 930 (Ala.2005).

III. Discussion

A. Liability

Dees claims that her employment was terminated in retaliation for her filing a worker’s compensation claim. Alabama is an at-will-employment state. Thus, an employment contract of indefinite duration “may be terminated by ei *379 ther party with or without cause or justification.” Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala.1987). However, the legislature has created the following exception: “No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits....” § 25-5-11.1, Ala.Code 1975 (emphasis added). A violation of this section is answerable in damages according to general tort principles. Caraway v. Franklin Ferguson Mfg. Co., 507 So.2d 925, 926 (Ala.1987).
Guyoungteeh argues that Dees’s employment was terminated as part of a bona fide and continuing layoff resulting from a reduction in the orders of parts by HMMA. See Yates v. United States Fid. & Guar. Ins. Co., 670 So.2d 908 (Ala.1995) (holding that a layoff caused by a corporate downsizing unrelated to a worker’s compensation claim is not actionable under § 25-5-11.1). Dees presented evidence from which the jury reasonably could infer that Guyoungtech’s stated reason for the layoff was a mask to conceal an illegal firing. See Yates, 670 So.2d at 909 (stating that if the employer presents a nonretaliatory reason for the discharge, “the plaintiff must then present evidence indicating that the stated reason was not the . true reason”).
Dees argues that the proximity between her return to work on April 5 with hour and weight-lifting restrictions and her discharge the next day permits an inference that she was fired because of her injury and resulting worker’s compensation claim. Although “mere closeness in time typically is not sufficient evidence of a retaliatory discharge,” Coca-Cola Bottling Co. Consol. v. Hollander, 885 So.2d 125, 131 (Ala.2003), Dees also points to evidence indicating that the Guyoungteeh executive who initiated her layoff most likely knew of her injury, even though he denied such knowledge. Further, the plant manager, who also served as safety director for the plant, denied knowing that Dees had been injured when he laid her off. The jury was entitled to find this testimony implausible. “It is settled law that the credibility of the witnesses is the province of the jury.” Floyd v. Broughton, 664 So.2d 897, 900 (Ala.1995). Dees also presented evidence indicating that Guyoung-tech, contrary to Alabama law, .had ceased reporting nondisabling injuries to its workers’ compensation insurer in an effort to reduce its premium costs. Guyoungteeh, on the other hand, demonstrated that other workers, including those in Dees’s department, had continued their employment at Guyoungteeh despite having filed worker’s compensation claims. Because we rmust view disputed evidence in a light most favorable to the jury verdict, Liberty National Life Ins. Co. v. Daugherty, 840 So.2d 152, 156 (Ala.2012), we are not in a position to substitute our judgment for that of the jury when evidence existed from which it could reasonably find that Guyoungteeh discharged Dees in violation of § 25-5-11.1.

B. Compensatory Damages

The jury awarded Dees $1 million in compensatory damages, which the trial court remitted to $300,000. A plaintiff has the burden of proving her damages. “The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence.” Johnson v. Harrison, 404 So.2d 337, 340 (Ala.1981). Dees sought compensation for future lost wages[1] and mental anguish.

*380
1. Future Lost Wages

Dees’s proof of future lost wages as a result of her discharge was scant. No expert testified as to her lack of employa-bility or restricted access to the labor market as a result of the discharge. When asked at trial, almost a year and a half after the termination of her employment, if she had applied for work elsewhere, Dees stated: “I’ve been under the treatment of the doctor and restrictions.” Dees’s answer, though indicating that she felt hampered in looking for work because of her injury, provided no evidence indicating that the discharge itself, the subject of this action, had rendered her less employable. Because Guyoungtech had provided her with a letter stating that “[h]er last day of employment was April 6, 2011 due to a reduction in force,” she did not bear the stigma of relating to a prospective employer that she had been fired from her previous job for any fault of her own.
Because the trial court bifurcated the worker’s compensation action and the retaliatory-discharge case, Dees’s damages, if any, for being out of work because of her injury were not at issue in this case. Thus, in computing damages for retaliatory discharge, the jury could not consider the physical effect of the injury in hindering Dees’s search for employment. Dees presented no evidence indicating that the firing itself interfered with her ability to find other employment. When asked if she had “been to another company, applied for a job and at least asked them to see whether they would take your restrictions or not,” Dees answered: “No, ma’am.” Dees’s failure to look for work prohibits her from arguing that her discharge negatively impacted her ability to find a job. See Lozier Corp. v. Gray, 624 So.2d 1034, 1037 (Ala.1993) (noting the absence of “evidence at trial that [the employer’s] termination of [the employee] caused [the employee] to be less marketable as an employee”); Gold Kist, Inc. v. Griffin, 657 So.2d 826, 829-30 (Ala.1994) (noting that discharged employee seeking damages for retaliatory discharge had “unsuccessfully applied for 20-25 different jobs,” thus indicating that “other potential employers would be reluctant to hire her because she was fired after suffering an on-the-job injury”).

2. Mental Anguish

Dees also sought damages for mental anguish. She testified to the fear and worry she experienced after losing her job at Guyoungtech. “There is no fixed standard for ascertaining the amount of compensatory damages that may be awarded for emotional distress. The determination of how much to award is left to the sound discretion of the jury, subject only to review by the court for a clear abuse of that discretion.” First Commercial Bank v. Spivey, 694 So.2d 1316, 1326 (Ala.1997). See also Foster v. Life Ins. Co. of Georgia, 656 So.2d 333, 337 (Ala.1994) (recognizing “that mental anguish and emotional distress are not items for which a precise amount of damages can be assessed”).
Recognizing the broad discretion allotted to the jury in determining compensation for mental suffering, we note that in retaliatory-discharge cases where testimony has indicated more severe effects than Dees experienced the awards were considerably lower. See Black Creek, Inc. v. Wood, 69 So.3d 172 (Ala.Civ.App.2011) (upholding $30,000 award for mental anguish where plaintiff saw a psychiatrist, took medication for depression, and suffered a divorce); Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App.1998) (upholding $75,000 award for mental anguish where plaintiff “could not pay his bills, his car was repossessed, he was evicted from his apartment, and he *381 and his wife divorced”). Although Dees expressed concern for the stability of her marriage as evidence. of her mental anguish, she did not experience a divorce. She presented no evidence indicating that she had lost her home or vehicle or that she needed mental-health treatment.

3. Admission of Mortality Tables into Evidence

Dees submitted a pretrial “Notice of Supplemental Exhibit of Mortality Tables.”[2] Guyoungtéeh objected on the ground of relevancy, stating that “any alleged damages resulting from Guyoung-tech’s alleged retaliatory discharge has absolutely no relevance to [Dees’s] life expectancy.” During trial Guyoungtech objected to the admission of the mortality tables as “too speculative” a basis for calculating damages. Dees responded that the tables were relevant to the mental-anguish claim. Guyoungtech’s counsel answered:
“And again, Your Honor, if it’s just for future anguish or mental pain and anguish, it’s again pure speculation. She may or may not have it. How can, without other evidence from the psychiatrist or a physician or anybody in the know, how can that be admitted into evidence to make an argument that she’s going to have it for the rest of her life? It’s pure speculation.”
Counsel for Dees replied that “[w]e believe that it’s required to be in evidence to be able to argue about mental anguish and the effects on her life.”
The trial court admitted the mortality tables into evidence. Guyoungtech objected to admission of the mortality tables during the jury-charge conference and also in its motion for a JML at the close of the evidence. While arguing in opposition to the motion for a JML, Dees’s counsel stated: “Are [the jurors] satisfied, are they reasonably satisfied that she would have worked there for a period of time and earned wages in the future and that’s why we wanted the mortality table.”
The trial court charged the jury as follows:
“Now one of the exhibits that’s in evidence is called a mortality table. Let me read you a charge explaining that. Mortality tables are a means of ascertaining the probable number of years a person of a given age in ordinary health will live. And the mortality, table may be used by you as an aid in computing damages if you are reasonably satisfied from the evidence that the injuries sustained by Mrs. Dees are permanent. Such tables are not binding upon you and they are not conclusive.”
In its posttrial “Motion to Remit Damages,” Guyoungtech argued that the admission of the mortality tables was improper because Dees “offered no evidence that she could never work again, for any reason, for the remainder of her life expectancy.” During argument on the motion, Guyoungtech reiterated: “And the point being, Your Honor, there was no basis for the mortality table[s] and no testimony as to how it applied, no testimony that Ms. Dees would somehow be permanently precluded from obtaining work....” The mortality tables, Guyoungtech concluded, “[c]aused confusion and prejudice.”
On appeal Guyoungtech argues that the mortality tables were inadmissible to prove damages for either lost wages or mental anguish because “no issues of permanent disability were argued in this case” and because, it says, the issue of Dees’s physi *382 cal injury was reserved for the separate worker’s compensation case.- Guyoung-tech’s brief, at 35-36. Dees responds that the admissibility of the mortality tables is not reviewable because “the jury verdict form did not distinguish between the two types of damages.” Dees’s brief, at 60.
“Mortality tables are admissible where there is evidence that the plaintiff has suffered permanent personal injuries or the question of a person’s life expectancy is a material question to be decided.” Drummond Co. v. Self, 622 So.2d 336, 337 (Ala.1993) (citing C. Gamble, McElroy’s Alabama Evidence § 259.01(1) (4th ed.1991)). See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Smelley, 295 Ala. 346, 349, 329 So.2d 544, 546 (1976) (“In Alabama, mortality tables are admissible when there is evidence (even though it may be controverted) from which the jury may draw a reasonable inference that a plaintiffs injuries are permanent.”). See also Ozment v. Wilkerson, 646 So.2d 4, 6 (Ala.1994) (holding that mortality tables were admissible where the jury “reasonably could have concluded that [a surgical] scar constituted a permanent injury”); Louisville & Nashville R.R. v. Richardson, 285 Ala. 281, 283, 231 So.2d 316, 317 (1970) (holding that mortality tables “are competent evidence, where the injury is permanent”); Clark v. Hudson, 265 Ala. 630, 635, 93 So.2d 138, 142 (1956) (holding that mortality tables were admissible in light of “evidence from which there is a reasonable inference that plaintiffs injuries are permanent”).
In Collins v. Windham, 277 Ala. 129, 167 So.2d 690 (1964), this Court considered the use of a mortality table in a case where the injury alleged was mental anguish. “The specific question before us,” the Court stated, “is whether there was sufficient evidence from which the jury could draw a reasonable inference that the plaintiffs injuries were permanent, since the alleged injury- was subjective and there was no expert medical testimony showing the injuries to be permanent.” Collins, 277 Ala. at 131, 167 So.2d at 692. After reviewing similar cases from other jurisdictions, the Court concluded:
“[W]here the injury complained of is purely subjective, as in the present case, and where there is no expert medical testimony tending to show the permanency of the alleged injury, mortality tables are not admissible in evidence. To hold otherwise would permit the jury to award damages based on speculation and guesswork.”
277 Ala. at 132-33, 167 So.2d at 693-94. See also Flowers Hosp., Inc. v. Arnold, 638 So.2d 851, 852 (Ala.1994) (reversing a compensatory-damages award to a plaintiff who fell out of a wheelchair in a hospital and developed a mental condition dubbed “fear of hospitals” because “neither side presented expert testimony as to whether [the plaintiffs] fear of hospitals was permanent”); Jones v. Fortner, 507 So.2d 908, 910 (Ala.1987) (“It has been held that where there is nothing from which a layman can form any well-grounded opinion as to the permanency of the injury or where the injury is purely subjective, expert evidence must be introduced.” (citing 25A C.J.S. Damages § 162(9), at 110 (1966))).
Testifying about the mental anguish she suffered, Dees expressed concern about the potential effect of her discharge on the well-being of her daughters and on her relationship with her husband, Brad.
“Q. Now, I want to ask you about how you felt when you found out that you had been terminated, okay? Now, first of all, how does it feel to be what you think is wrongfully terminated? How did that feel to you to lose your job in the way that you lost it?
*383 “A. I was hurt.
“Q. Okay. And can you tell the jury why it hurt you?
“A. Because even — even though I’m married, those are not Brad’s kids and I feel obligated to take care of my girls.
[[Image here]]
“Q. Now, what kind of worries has this created for you now that you do not have a job instead of working in the quality control department?
“A. Everything is on Brad’s shoulders. I’m not able — like I said, those are not his children, even though we’re married. What can I — I mean, what can I do for my daughters? They don’t look to Brad, they look to me to provide for them, not Brad.
“Q. Well, Brad does provide for the family right now, doesn’t he?
“A. (Witness shakes head in the affirmative.)
“Q. And is Brad continuing to work at Guyoungtech?
“A. Yes.
“Q. Do you worry about that?
“A. I do.
“Q. And why do you worry about that?
“A. I’m scared that no matter how this case go[es], in the end they’re going to let him go.
“Q. So you’re worried that this case when it’s over, he’s going to get fired, is that what you’re saying?
“A. Yes, sir.
“Q. And then, do you worry about what would happen to your marriage if that happened?
“A. Yes, sir.”
Dees felt hurt about losing her job; she was afraid of being unable to provide for her daughters, even though her husband continued to be employed at Guyoungtech; and she feared that Guyoungtech would eventually fire her husband, which could adversely affect her marriage. This testimony of a “purely subjective” injury unsupported by expert medical evidence of its permanency failed as a matter of law to support the admission into evidence of the mortality tables. Jones v. Fortner, 507 So.2d at 910. Additionally, the trial court’s instruction that “the mortality table may be used by you as an aid in computing damages if you are reasonably satisfied from the evidence that the injuries sustained by Mrs. Dees are permanent” was also improper. The jury was in no position to assess the permanency of Dees’s subjective mental injury without expert medical testimony. As this Court stated in Flowers Hospital, in the absence of expert medical evidence, “the trial court erred in charging the jury that it could award damages for permanent injury if it was satisfied that [the plaintiff] suffered a permanent injury.” 638 So.2d at 853.
In Flowers Hospital, this Court concluded: “Because we cannot determine whether the instructions on permanent injury affected the jury’s verdict, we must reverse the judgment based on that verdict and remand the case for a new trial.” 638 So.2d at 853. In Collins, the Court stated: “We cannot say, in the present ease, that the admission in evidence of the mortality table did not affect the jury in arriving at the verdict, especially in view of the argument made to the jury and the amount of the verdict.” 277 Ala. at 133, 167 So.2d at 694. Dees’s counsel did not specifically reference the mortality tables in his closing argument, but he did argue that “[t]here’s no evidence that she wouldn’t have worked for the rest of her life” at Guyoungtech. The $15,000 verdict in Collins was remitted by the trial court to $12,000. Given the size of the compensatory-damages award in this case — $1 million remitted by the trial court to $300,000— *384 the concern of the Collins Court about the effect of an improperly admitted mortality table on the size of the mental-anguish verdict applies here.

4. Verdict Form

The verdict form distinguished between compensatory damages and punitive damages but did not ask the jury to itemize the individual components of the compensatory-damages award: lost future wages and mental anguish. Thus, the compensatory-damages award of $1 million (remitted to $300,000) might have been entirely for either lost future wages or mental anguish, or for some indiscernible combination of the two. If the trial court’s evidentiary and instructional errors were confined solely to the calculation of lost wages or solely to the calculation of mental-anguish damages, we would not be in a position to review the compensatory-damages verdict. In that situation, the verdict could have represented solely the type of damages unaffected by the trial court’s error.
Reviewing a case in which the verdict form did not distinguish between compensatory damages and punitive damages, this Court declined to speculate as to how the damages were apportioned between those two components. “We cannot say whether the [verdict] is right or wrong; we do not know what it represents, and it could be either right or wrong, i.e., either appropriate or excessive.” City Realty, Inc. v. Continental Cas. Co., 623 So.2d 1039, 1046 (Ala.1993). In that case, the Court also declined to remand the case for itemization of the verdict “because the parties did not object to the undesignated verdict at trial.” Id.
In Coastal Bail Bonds, Inc. v. Cope, 697 So.2d 48 (Ala.Civ.App.1996), the trial court refused the defendants’ request for a verdict form differentiating between compensatory damages and punitive damages. The Court of Civil Appeals, affirming the judgment entered on the verdict, found the error to be harmless because the evidence supported assigning the entire award either to compensatory damages or to punitive damages. “Obviously, since both extremes of compensatory and punitive damages are supported by the evidence, any combination of the two also is supported by the evidence.” 697 So.2d at 52. Conversely, in this case, because the lost-wages and mental-anguish prongs of the compensatory-damages award are both infected by error, we may reverse without knowing how the jury allotted damages between lost wages and mental anguish. To paraphrase the Coastal court: Because neither extreme of lost-wages or mental-anguish damages is supported by the’ evidence, any combination of the two also is not supported by the evidence.

5. Remedy

Dees argued at trial that the mortality tables were offered into evidence to support both lost-wages and mental-anguish damages. Guyoungtech objected to their use on both grounds. The trial court’s instruction did not differentiate between the use of the mortality tables to compute the two types of damages, stating generically that “the mortality table[s] may be used by you as an aid in computing damages if you are reasonably satisfied from the evidence that the injuries sustained by Mrs. Dees are permanent.” The mortality tables were erroneously admitted in regard to mental-anguish damages because the permanence of a subjective injury cannot be determined without expert medical testimony. The mortality table were erroneously admitted in regard to future-lost-wages damages because Dees offered no evidence of permanent unem-ployability ascribable to the termination of *385 her employment at Guyoungtech. Accordingly, we reverse the award of compensatory damages.

C. Punitive Damages

Because we are reversing the compensatory-damages award, we must also reverse the punitive-damages award. Compensatory or nominal damages must first be awarded before punitive damages can be assessed. Life Ins. Co. of Georgia v. Smith, 719 So.2d 797, 806 (Ala.1998). Because a jury may possibly consider awarding punitive damages on any retrial of this case, we offer some guidance to the trial court to avoid an evidentiary error that affected these proceedings and to which Guyoungtech objected. At trial, the foundation of Dees’s argument that punitive damages should be awarded was that Guyoungtech had not timely reported many workers’ compensation claims to its insurance carrier. See Rule 480-5-1-.01, Ala. Admin. Code (Dep’t of Labor) (requiring filing of “First Report of Injury” form within 15 days of claim). Dees presented evidence indicating that this policy was a conscious decision by management at Guy-oungtech to reduce insurance costs. As the trial court pointed out in its post-judgment order, such a policy violates Alabama law, which requires the reporting of all workplace injuries to the State. Alternatively, a company may self-insure, as Guyoungtech apparently did for some injuries, but Guyoungtech did not meet the legal requirements to self-insure. See Rule 480-5-2-.02, Ala. Admin. Code (Dep’t of Labor).
Dees argued that the evidence of non-reporting of injuries demonstrated Guy-oungtech’s callousness toward injured workers and was probative in particular of Guyoungteeh’s animus toward Dees as an injured worker, thus justifying a large punitive-damages award. Guyoungtech objected to admission of this evidence, arguing that its failure to report small workers’ compensation claims had no effect on Dees because, it reasoned, Guy-oungtech reported Dees’s injury to its carrier and she had received worker’s compensation medical and lost-wage benefits. The trial court erred in allowing the jury to consider behavior of Guyoungtech unrelated to Dees’s claimed injury as a basis for imposing punitive damages.
“[T]he most important indici-um of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant’s conduct.” BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
“A defendant’s dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation.of punitive damages, to adjudicate the merits of other parties’ hypothetical claims against a defendant under the guise of the reprehensibility analysis....
[[Image here]]
“... The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance .... ”
State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422-24, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Several years later the United States Supreme Court reiterated that “we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others.” Philip Morris USA v. Williams, 549 U.S. 346, *386 354, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007). Mowing a jury to base' its punitive-damages award “in part upon its desire to punish the defendant for harming persons who are not before the court” “would amount to a taking of property from the defendant without due process.” 549 U.S. at 349. See also Williams v. ConAgra Poultry Co., 378 F.3d 790, 797 (8th Cir.2004) (citing State Farm for the proposition that “courts cannot award punitive damages to plaintiffs for wrongful behavior that they did not themselves suffer”); § 6-11-20(a), Ala.Code 1975 (stating that to receive punitive damages a plaintiff must prove “by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff” (emphasis added)).
Guyoungtech sent a timely “First Report of Injury” for Dees to its workers’ compensation insurance carrier, who then paid worker’s compensation benefits to Dees. Mhough the court allowed Dees to present evidence showing that Guyoung-tech’s carrier had denied payment of benefits to injured workers whose “First Reports of Injury” forms were untimely filed, the jury should not have been allowed to consider that fact in assessing punitive damages. This conduct, which concerned “other parties’ hypothetical claims,” did not harm Dees. State Farm, 538 U.S. at 423. Consideration of potential malfeasance arising from these late-filed claims expanded the scope of the case to facts unrelated to Dees’s injury and allowed an award of punitive damages for “defendant’s dissimilar acts, independent from the acts upon which liability was premised.” State Farm, 538 U.S. at 422.
The trial court allowed testimony, admitted exhibits, and permitted argument about these dissimilar acts affecting non-parties. Near the beginning of his opening statement, counsel for Dees stated: “This is a case about holding this company responsible for the way they treat this employee and other employees.” (Emphasis added.) At the close of his opening statement, counsel for Dees reiterated: “This case is about two things: It’s about what they did to her and it’s about what they did to other people.” (Emphasis added.) The trial court instructed the jury that “you may consider the defendant’s general policy and practice with respect to other employees” and gave an extensive critique of business practices that did not affect Dees:
“The law of Alabama does not allow a company to decide not to report claims and call itself self-insured unless it is approved by the State of Alabama Department of Industrial Relations.[3]
[[Image here]]
“... [T]he laws of the State of Alabama do not allow any company at any time to engage in any activity to stop first report of injury forms from being filed with the Department of Industrial Relations Workers’ Compensation Division.”
By allowing evidence, argument, and jury instructions — over objections from Guy-oungtech — that permitted and encouraged the jury to punish Guyoungtech for allegedly wrongful behavior to other employees that caused Dees no harm, the trial court erred.

*387
D. Scope of a New Trial

Because the trial court erred in admitting into evidence the mortality tables to support Dees’s claim for compensatory damages, we are reversing its judgment and remanding the case for a new trial on both the liability and the compensatory-damages and punitive-damages issues. “A partial new trial ... may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.” Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Where “the question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty,” id., a new trial should be ordered on all issues. In this case a determination of compensatory damages cannot be made without rehearing the evidence of liability. A jury cannot evaluate mental-anguish damages or lost future wages without hearing testimony about the circumstances surrounding the termination of Dees’s employment.
Other courts have held that the question of punitive damages is too intertwined with the issue of liability for one to be tried without the other. “[A]n award of punitive damages should rest on the jury’s assessment of all the evidence in the case. Hence, the issue of punitive damages is so intertwined with the other issues that it should be retried with them.” Fury Imports, Inc. v. Shakespeare Co., 554 F.2d 1376, 1389 (5th Cir.1977). See also Mason v. Texaco, Inc., 948 F.2d 1546, 1554 (10th Cir.1991) (“A punitive damage[s] claim is not an independent cause of action or issue separate from the balance of a plaintiffs case. It is part and parcel of a liability determination.... ”). Under Alabama law, an award of punitive damages requires proof “by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.” § 6-11-20(e), Ala.Code 1975. The evidence affecting liability is thus intermingled with the evidence necessary to determine punitive damages.
Because a determination of both compensatory damages and punitive damages is dependent upon consideration of the evidence that supports a finding of liability, a new trial on all issues will best serve the ends of justice. Because “the issues in this case are interrelated, thereby complicating our separation of them, we believe justice will be best served by a reversal and retrial of the case in its entirety.” Beneficial Mgmt. Corp. of America v. Evans, 421 So.2d 92, 98 (Ala.1982).

TV. Conclusion

We reverse the judgment of the trial court and remand the case for a new trial on all issues. We caution the trial court that on remand evidence about business practices that caused Dees no harm is not admissible for the purpose of assessing punitive damages.
REVERSED AND REMANDED.
WISE, J., concurs.
MURDOCK, J., concurs specially.
STUART, BOLIN, and BRYAN, JJ., concur in the result.
PARKER and MAIN, JJ., dissent.

. At trial Dees did not seek compensation for past lost wages.

. A mortality table is "[a]n organized chart of statistical data indicating life expectancies...." Black's Law Dictionary 41 (9th ed.2009) (entry for “actuarial table”).